IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

| | |
|---|---|
| JOHN CORDELL, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| vs. ) | No. _____ |
| ) | JURY DEMAND |
| ) | |
| HAMILTON COUNTY, TENNESSEE, ) | |
| AARON CAMERON, and JOHN DOES ) | |
| 1, 2, and 3, ) | |
| ) | |
| DEFENDANTS. ) | |

## COMPLAINT

Comes the Plaintiff, John Cordell, by and through undersigned counsel, and for his cause of action against the Defendants would respectfully show to the Court and Jury as follows:

### I. THE PARTIES

1.1   The Plaintiff, John Cordell, is a resident of Hamilton County, Tennessee.

1.2   The Defendant, Hamilton County, Tennessee, is a governmental entity located in Hamilton County, Tennessee, and at all times relevant to the Complaint was responsible for the customs, policies, procedures, and training of its employees as well as the wrongs committed by Deputy Sheriffs pursuant to Tenn. Code Ann. § 8-8-302.

1.3   The Defendant, Aaron Cameron, is, upon information and belief, a resident of Hamilton County, Tennessee, and at all times relevant to this Complaint was acting under color of state law as a Deputy Sheriff for Hamilton County, Tennessee. Defendant

Cameron is being sued in his individual capacity as a Deputy Sheriff of the Hamilton County Sheriff's Department.

1.4 The Defendants, John Does 1, 2 and 3, are, upon information and belief, law enforcement officers and/or employees of Defendant Hamilton County or another responding law enforcement agency but are unknown at the present time. Plaintiff has attempted to identify these individuals, but the information currently available to the Plaintiff is not sufficient to discover the identity of these individuals. It is anticipated that these individuals will be identified during the discovery process in this case.

## II. JURISDICTION

2.1 This Court has jurisdiction over the Federal claims asserted in this action pursuant to 28 U.S.C. § 1331 (Federal Question) and § 1343 (Civil Rights), as well as 42 U.S.C. § 1983. This court has jurisdiction over the State claims asserted in this action pursuant to 28 U.S.C. §1347 (Supplemental), as both the State claims and Federal claims form part of the same controversy.

## III. VENUE

3.1 Venue of this action is proper pursuant to 28 U.S.C. 1391(b) in that the events giving rise to the action occurred in the Eastern District of Tennessee.

## IV. NATURE OF THE CASE

4.1 This action arises under the Fourth Amendment to the United States Constitution and under federal law, specifically, the Civil Rights Act of 1964 (as amended), 42 U.S.C. § 1983 *et seq.* for violations of the Constitutional Rights of the Plaintiff, John Cordell. It also arises under Tennessee law for a claim against Hamilton County pursuant to Tenn. Code Ann. § 8-8-302 as well as state law claims for assault and battery, false

imprisonment, and malicious prosecution.

## V. FACTS

5.1     On or about January 17, 2021, Mr. Cordell was a passenger in a vehicle being driven by Joseph Mefford.

5.2     Mr. Mefford was driving at a high rate of speed in an apparent attempt to evade law enforcement and caused a high speed chase by officers from several law enforcement agencies.

5.3     Defendant Cameron, at the time of this incident, was a Deputy Sheriff working as a patrol officer with the Hamilton County Sheriff's Department.

5.4     Defendant Cameron was driving the primary pursuit vehicle during the pursuit of Mr. Mefford by law enforcement.

5.5     During the pursuit, Mr. Cordell repeatedly requested Mr. Mefford to stop the vehicle and let him out because he did not want to have anything to do with the incident.

5.6     Also during the pursuit, Mr. Cordell called 911 and told the operator that he was the passenger in the car being pursued by law enforcement and that he did not wish to be harmed by Mr. Mefford or law enforcement.

5.7     Mr. Cordell was instructed by the 911 operator to make sure that his seat belt was buckled and to keep his hands raised to let law enforcement know that he was not a threat and not resisting.

5.8     Eventually, law enforcement boxed in Mr. Mefford's vehicle causing it to come to a stop and become stuck between three law enforcement vehicles, including the vehicle of Defendant Cameron.

5.9     Defendant Cameron's vehicle was stopped at the passenger door of Mr.

Mefford's vehicle.

5.10   Upon stopping the vehicle, law enforcement, including Defendant Cameron and Defendants John Does, began shouting profanities and commands at Mr. Cordell.

5.11   Mr. Cordell was instructed to show his hands, get out of the vehicle, not to move, and not to reach.

5.12   Mr. Cordell had his hands raised, but had his seat belt buckled and could not comply with the command to get out of the car without disobeying the commands not to move or reach to unbuckle his seatbelt.

5.13   Despite the fact that Mr. Cordell did not verbally or physically threaten Defendant Cameron or any other law enforcement officer, two of the John Doe Defendants physically grabbed Mr. Cordell's arms and pulled him out of the vehicle after another officer unbuckled Mr. Cordell's seatbelt.

5.14   While Mr. Cordell was being pulled out of the vehicle, Defendant Cameron repeatedly used his electroshock weapon on Mr. Cordell without warning and without provocation.

5.15   Once out of the vehicle, Mr. Cordell was dropped on the ground by the Defendants.

5.16   Despite not being a threat to anyone, Defendant Cameron continued to use his electroshock weapon on Mr. Cordell multiple times while he was on the ground without warning and without provocation.

5.17   While Mr. Cordell was on the ground and being repeatedly shocked by Defendant Cameron, he was also assaulted by the individual Defendants.

5.18   Mr. Cordell never threatened any law enforcement officers.

5.19 Mr. Cordell never deliberately resisted any commands of the law enforcement officers.

5.20 Mr. Cordell only failed to comply with commands of law enforcement when he was unable to comply because of being restrained by his seat belt, being given contradictory commands, or being incapacitated by Defendant Cameron's use of the electroshock weapon.

5.21 Defendant Cameron had no reason to use physical force against Mr. Cordell.

5.22 Defendants John Does had no reason to use physical force against Mr. Cordell.

5.23 Defendant Cameron was not justified in using physical force against Mr. Cordell.

5.24 Defendants John Does were not justified in using physical force against Mr. Cordell.

5.25 In using force against Mr. Cordell, Defendant Cameron was deliberately indifferent to Mr. Cordell's federally protected rights, including his right to be free from unreasonable and/or unnecessary force, excessive force that amounts to punishment, and the wanton infliction of pain.

5.26 In using force against Mr. Cordell, Defendants John Does were deliberately indifferent to Mr. Cordell's federally protected rights, including his right to be free from unreasonable and/or unnecessary force, excessive force that amounts to punishment, and the wanton infliction of pain.

5.27 Defendant Cameron's use of force against Mr. Cordell was unreasonable.

5.28 Defendants John Does' use of force against Mr. Cordell was unreasonable.

5.29  Defendant Cameron's use of force against Mr. Cordell was unnecessary.

5.30  Defendants John Does' use of force against Mr. Cordell was unnecessary.

5.31  Defendant Cameron's use of force against Mr. Cordell was excessive.

5.32  Defendants John Does' use of force against Mr. Cordell was excessive.

5.33  Defendant Cameron's use of force against Mr. Cordell was a wanton infliction of pain.

5.34  Defendants John Does' use of force against Mr. Cordell was a wanton infliction of pain.

5.35  Defendant Cameron's use of force against Mr. Cordell was deliberate and intentional.

5.36  Defendants John Does' use of force against Mr. Cordell was deliberate and intentional.

5.37  Defendant Cameron was aware of a substantial risk of harm in using force against Mr. Cordell.

5.38  Defendants John Does were aware of a substantial risk of harm in using force against Mr. Cordell.

5.39  Defendant Cameron consciously disregarded the risk of harm to Mr. Cordell and chose to use force despite being aware of the risk.

5.40  Defendants John Does consciously disregarded the risk of harm to Mr. Cordell and chose to use force despite being aware of the risk.

5.41  At the time Mr. Cordell was assaulted by Defendant Cameron, Mr. Cordell was not physically or verbally threatening Defendant Cameron or any other person.

5.42  At the time Mr. Cordell was assaulted by Defendants John Does, Mr. Cordell

was not physically or verbally threatening Defendants John Does or any other person.

5.43 At the time Mr. Cordell was assaulted by Defendant Cameron, Mr. Cordell did not pose a significant threat to himself.

5.44 At the time Mr. Cordell was assaulted by Defendants John Does, Mr. Cordell did not pose a significant threat to himself.

5.45 At the time Mr. Cordell was physically assaulted by Defendant Cameron, Mr. Cordell did not pose a significant threat to Defendant Cameron or any other person.

5.46 At the time Mr. Cordell was physically assaulted by Defendants John Does, Mr. Cordell did not pose a significant threat to Defendants John Does or any other person.

5.47 At the time Mr. Cordell was assaulted by Defendant Cameron, Mr. Cordell's conduct did not create a rapidly evolving situation.

5.48 At the time Mr. Cordell was assaulted by Defendants John Does, Mr. Cordell's conduct did not create a rapidly evolving situation.

5.49 Defendant Cameron unreasonably escalated the incident with Mr. Cordell by assaulting Mr. Cordell without warning or provocation.

5.50 Defendants John Does unreasonably escalated the incident with Mr. Cordell by assaulting Mr. Cordell without warning or provocation.

5.51 In doing the acts alleged in this complaint, Defendant Cameron was acting under the color of the statutes, ordinances, regulations, customs, policies, and usages of the Hamilton County Government, the State of Tennessee and under the authority of his office as a Deputy Sheriff of the Hamilton County Sheriff's Department.

5.52 In doing the acts alleged in this complaint, Defendants John Does were acting under the color of the statutes, ordinances, regulations, customs, policies, and usages of

the County Governments for which they are employed, the State of Tennessee and under the authority of their office as a law enforcement officers.

5.53 Defendant Hamilton County is responsible for all wrongs, injuries, losses, damages and expenses resulting from the actions of Defendant Cameron and Defendants John Does in their positions as a Deputy Sheriffs of Defendant Hamilton County pursuant to Tenn. Code Ann. § 8-8-302.

5.54 After Mr. Cordell was assaulted and shocked by the Defendants, Defendant Cameron applied handcuff restraints to Mr. Cordell, securing his wrists behind his back and preventing the use of his hands and arms to support himself or stand up.

5.55 Despite having restrained Mr. Cordell, the Defendants continued to apply force in an excessive and unreasonable manner by jerking Mr. Cordell's arms and forcing him violently to the ground.

5.56 The restraints placed on Mr. Cordell's wrists were also too tight and resulted in injuries to Mr. Cordell's wrists.

5.57 Mr. Cordell informed Defendant Cameron that the handcuffs were too tight and requested that they be loosened.

5.58 Despite this request, Defendant Cameron refused to loosen the cuffs.

5.59 Mr. Cordell had not committed any crime, nor was there any evidence that he had done so.

5.60 Mr. Cordell informed the Defendants multiple times that he had not committed any crime and had contacted 911 to report the situation to authorities during the pursuit.

5.61 Defendant Cameron repeatedly used profanity and instructed Mr. Cordell not to speak.

5.62   Mr. Cordell had not resisted any law enforcement officer's efforts to effect a stop, frisk, halt, arrest or search of himself or any other person.

5.63   Mr. Cordell had attempted to obey all commands of law enforcement that he was able to obey and which did not contradict other commands he had been given.

5.64   Defendant Cameron knew that Mr. Cordell had not committed any crime and had not resisted attempts to effect a stop, frisk, halt, arrest or search of himself or any other person.

5.65   Defendant Cameron knew that Mr. Cordell had obeyed all lawful commands of the law enforcement officers that he was able to obey and which did not contradict other commands that he had been given.

5.66   Despite being aware that Mr. Cordell had not offered any intentional resistance to the law enforcement officers and had attempted to obey all commands he was able to obey, Defendant Cameron swore out criminal charges against Mr. Cordell for violation of Tenn. Code Ann. § 39-16-602 - Resisting stop, frisk, halt, arrest or search - a Class B misdemeanor.

5.67   In taking out the criminal warrant, Defendant Cameron swore that Mr. Cameron had given "the appearance of complying by raising his hands," but then refused "to obey verbal commands to exit the vehicle."

5.68   Mr. Cordell was instructed by the law enforcement officers to show his hands and to get out of the vehicle but also not to move and not to reach.

5.69   Mr. Cordell was unable to comply with the command to get out of the vehicle because he had his seat belt buckled and could not undo the seat belt without disobeying the commands not to move and not to reach.

5.70    Defendant Cameron's statement that Mr. Cordell refused to obey verbal commands was false.

5.71    In taking out the criminal warrant, Defendant Cameron also swore that Mr. Cordell had offered "resistance to being taken into custody by tensing his arms and, at times, concealing his hands under his body."

5.72    Defendant Cameron used his electroshock weapon on Mr. Cordell multiple times, including while he was exiting the vehicle.

5.73    The use of the electroshock weapon by Defendant Cameron caused Mr. Cordell's muscles to tense and contract due to electro-muscular incapacitation.

5.74    Mr. Cordell was also dropped onto the ground by the individual Defendants while Defendant Cameron used his electroshock weapon causing Mr. Cordell's arms to be under his body.

5.75    Mr. Cordell had not offered any resistance to law enforcement officers as the movements of his body were involuntary and caused by Defendant Cameron's use of the electroshock weapon.

5.76    Defendant Cameron's statement that Mr. Cordell offered resistance and concealed his hands under his body was false.

5.77    In taking out the criminal warrant, Defendant Cameron also swore that Mr. Cordell had "made furtive movements by flailing his body and arms in various directions resisting attempts to be detained."

5.78    Defendant Cameron used his electroshock weapon on Mr. Cordell multiple times while officers were in the process of placing him in wrist restraints.

5.79    The use of the electroshock weapon by Defendant Cameron caused Mr.

Cordell's muscles to tense and contract due to electro-muscular incapacitation.

5.80    Mr. Cordell was also being grabbed by several officers at once while Defendant Cameron used his electroshock weapon and the other officers used their batons causing Mr. Cordell's body to be jerked around and causing him to instinctively protect his face with his hands.

5.81    Mr. Cordell never made any furtive movements before, during, or after the incident.

5.82    Defendant Cameron's statement that Mr. Cordell made furtive movements by flailing his body and arms to resist attempts to detain him was false.

5.83    In taking out the criminal warrant, Defendant Cameron also swore that Mr. Cordell had "refused to follow deputies (sic) commands," even after he was taken into custody.

5.84    After being arrested, Mr. Cordell was instructed at times to stand up and sit down.

5.85    Mr. Cordell was jerked by the officers during these commands, but stood up when instructed and sat down when instructed.

5.86    Mr. Cordell was also given several profanity filled commands not to speak while Mr. Cordell calmly explained that he had done nothing wrong and had even called 911 during the pursuit.

5.87    Although the officers had no authority to prohibit Mr. Cordell's speech in this manner, he complied with these commands as well.

5.88    Defendant Cameron's statement that Mr. Cordell refused to obey commands after he was arrested was false.

5.89 The statements made by Defendant Cameron in his affidavit of complaint were material in obtaining the criminal warrant against Mr. Cordell for violating Tenn. Code Ann. § 39-16-602.

5.90 Defendant Cameron knowingly and deliberately made the false statements to obtain the criminal warrant against Mr. Cordell.

5.91 Defendant Cameron, with reckless disregard of the truth, made the false statements to obtain the criminal warrant against Mr. Cordell.

5.92 Without Defendant Cameron's false statements, there was no probable cause for prosecuting Mr. Cordell for violating Tenn. Code Ann. § 39-16-602.

5.93 As a result of the criminal charges, Mr. Cameron was arrested and processed at the Hamilton County Jail, spent time in jail, and was required to make a bond to be released from jail pending the criminal cases against him.

5.94 As a result of the criminal charges, Mr. Cordell had to hire an attorney to defend him on the charges.

5.95 On June 14, 2021, the criminal charge pending in Hamilton County against Mr. Cordell was dismissed after video evidence was shown proving that Mr. Cordell did not resist law enforcement, and on July 29, 2021, the criminal charge pending in Rhea County against Mr. Cordell was likewise dismissed.

5.96 Defendant Hamilton County was responsible for properly training Defendant Cameron and other law enforcement officers in the reasonable use of force, including the use of electroshock weapons, as well as the requirement to have probable cause before making an arrest.

5.97 Defendant Hamilton County was responsible for establishing policies and

procedures in the reasonable use of force, including the use of electroshock weapons, to be followed by its deputies, including Defendant Cameron and Defendants John Does, as well as policies and procedures to establish probable cause before making an arrest.

5.98 National, state and local standards limit the use of physical force only to overcome resistance, repel aggression, protect life, or retake a prisoner or property.

5.99 National, state, and local standards prohibit the use of physical force as a punishment.

5.100 National, state, and local standards consider the use of electroshock weapons as the use of physical force.

5.101 National, state, and local standards prohibit the use of electroshock weapons against a person who is not actively resisting or where there is not an immediate threat of bodily harm to anyone.

5.102 The Fourth Amendment to the Constitution of the United States requires probable cause to exist before a person is arrested.

5.103 It is obvious that the complete lack or inadequacy of policies and procedures for the use of force during an arrest, including the use of electroshock weapons, would lead to the deprivation of the right of persons to be free from excessive use of force.

5.104 It is obvious that the complete lack or inadequacy of training for employees in the use of force during an arrest, including the use of electroshock weapons, would lead to the deprivation of the right of persons to be free from excessive use of force.

5.105 It is obvious that the complete lack or inadequacy of policies and procedures for defining and requiring probable cause to arrest an individual would lead to the deprivation of the right of persons to be free from arrests without probable cause.

5.106  It is obvious that the complete lack or inadequacy of training for employees in the definition and requirement to have probable cause prior to arresting an individual would lead to the deprivation of the right of persons to be free from arrests without probable cause.

5.107  Defendant Hamilton County was actually aware that the individual Defendants were either wholly unaware of the proper use of force during an arrest or were unable to follow proper guidelines on the use of force during an arrest due to the complete lack or inadequacy of the training, supervision, policies, and procedures provided to the individual Defendants by Defendant Hamilton County.

5.108  Defendant Hamilton County was actually aware that the individual Defendants were either wholly unaware of the proper definition or requirement for probable cause prior to an arrest or were unable to follow proper guidelines on the definition or requirement for probable cause prior to an arrest due to the complete lack or inadequacy of the training, supervision, policies, and procedures provided to the individual Defendants by Defendant Hamilton County.

5.109 Defendant Hamilton County's failure to properly train, discipline, and supervise the individual Defendants regarding the use of force during an arrest and the definition and requirement for probable cause was deliberately indifferent to the rights of individuals being arrested by Defendant Hamilton County's employees, including Mr. Cordell.

5.110 Defendant Hamilton County's failure to properly train, discipline, and supervise the individual Defendants was the moving force behind the individual Defendants' use of excessive force against Mr. Cordell and the false arrest and malicious prosecution

of Mr. Cordell.

5.111  Defendant Hamilton County is responsible for all wrongs, injuries, losses, damages and expenses resulting from the actions of its Deputy Sheriffs, including Defendant Cameron and its other deputies involved in Mr. Cordell's arrest pursuant to Tenn. Code Ann. § 8-8-302.

### COUNT I
### (FOURTH AMENDMENT - VIOLATION OF 42 U.S.C. § 1983 - EXCESSIVE FORCE)

6.1  Defendant Cameron's actions and use of force as described above while acting under color of law were objectively unreasonable and excessive, thus depriving Mr. Cordell of his rights as guaranteed under the Fourth Amendment to the United States Constitution.

6.2  Defendants John Does' actions and use of force as described above while acting under color of law were objectively unreasonable and excessive, thus depriving Mr. Cordell of his rights as guaranteed under the Fourth Amendment to the United States Constitution.

6.3  Pursuant to statute, Defendant Cameron and Defendants John Does are liable to Plaintiff for special and general compensatory damages, including but not limited to, emotional, physical, economic, and pecuniary damages, punitive damages, and reasonable attorney's fees and costs.

### COUNT II
### (FOURTH AMENDMENT - VIOLATION OF 42 U.S.C. § 1983 - FALSE ARREST AND MALICIOUS PROSECUTION)

7.1  Defendant Cameron's false statement and other actions described above to obtain a criminal warrant against Mr. Cordell while acting under color of law, deprived Mr. Cordell of the his right to be secure in his person against unreasonable searches and

seizure as guaranteed to Mr. Cordell under the Fourth Amendment to the United States Constitution.

7.2     As a result of Defendant Cameron's actions, Mr. Cordell was arrested and prosecuted for violating Tenn. Code Ann. § 39-16-602.

7.3     Defendant Cameron made, participated in, and/or influenced the prosecution of Mr. Cordell, in that he made false statements claiming that Mr. Cordell had engaged in active and intentional resistance to his arrest by law enforcement.

7.4     Defendant Cameron's statements were made knowing that the statements were false or with a reckless disregard to their truth.

7.5     The arrest and prosecution of Mr. Cordell for violating Tenn. Code Ann. § 39-16-602 was without any probable cause because Mr. Cordell did not intentionally prevent or obstruct any law enforcement officer from effecting a stop, frisk, halt, arrest or search of any person nor was there any evidence that he had done so.

7.6     As a direct and proximate result of the criminal prosecution of Mr. Cordell for violating Tenn. Code Ann. § 39-16-602, Mr. Cordell was deprived of his right to be free from arrest and prosecution without probable cause.

7.7     The charges against Mr. Cordell for violation of Tenn. Code Ann. § 39-16-602 were dismissed on June 14, 2021, and July 29, 2021.

7.8     Pursuant to statute, Defendant Cameron is liable to Mr. Cordell for special and general compensatory damages, including but not limited to, emotional, physical, economic, and pecuniary damages, punitive damages, and reasonable attorney's fees and costs.

## COUNT III
## (Municipal Liability - Violation of 42 U.S.C.A. § 1983)

8.1    The conduct of Defendant Hamilton County described above deprived Mr. Cordell of his rights to be free from unreasonable seizures as guaranteed under the Fourth Amendment to the United States Constitution.

8.2    Upon information and belief, Defendant Hamilton County lacked adequate customs, policies, procedures, supervision, investigation, and training of its employees to prevent individuals, including Mr. Cordell, from being arrested without probable and to prevent its officers from using excessive force.

8.3    Pursuant to statute, Defendant Hamilton County is liable to Mr. Cordell for special and general compensatory damages, including but not limited to, emotional, physical, economic, and pecuniary damages, punitive damages, and reasonable attorney's fees and costs.

## COUNT IV
## (STATE LAW VICARIOUS LIABILITY - TENN. CODE ANN. §8-8-301, *ET SEQ.*)

9.1    Pursuant to Tenn. Code Ann. § 8-8-301, et seq., Defendant Hamilton County is also liable to Mr. Cordell for the wrongs, injuries, losses, damages and expenses resulting from the actions of Defendant Cameron who was a Deputy appointed by the Hamilton County Sheriff and, at the time of the incident described in this complaint, was acting by virtue of or under color of that office.

9.2    Pursuant to Tenn. Code Ann. § 8-8-301, et seq., Defendant Hamilton County is also liable to Mr. Cordell for the wrongs, injuries, losses, damages and expenses resulting from the actions of other deputies involved in the arrest of Mr. Cordell and who were appointed by the Hamilton County Sheriff and, at the time of the incident described

in this complaint, were acting by virtue of or under color of that office.

## COUNT V
### (State Law Claims - Assault and Battery, False Imprisonment, and Malicious Prosecution)

10.1  On January 17, 2021, Mr. Cordell was arrested and prosecuted for violation of Tenn. Code Ann. § 39-16-602.

10.2  Defendant Cameron and Defendants John Does used excessive and unreasonable force in effectuating Mr. Cordell's arrest as described above amounting to an assault and battery upon Mr. Cordell.

10.3  Defendant Cameron restrained and arrested Mr. Cordell without probable cause and without any evidence that Mr. Cordell had committed any crime.

10.4  Defendant Cameron started and/or brought about the criminal prosecution of Plaintiff John Cordell as described above with malice and without probable cause that Mr. Cordell had committed any crime.

10.5  The charges against Mr. Cordell were dismissed on June 14, 2021, and July 29, 2021.

## DAMAGES

11.1  As a direct and proximate result of the unlawful conduct of the Defendants as described above, John Cordell experienced significant emotional and physical pain and suffering.

11.2  As a direct and proximate result of the unlawful conduct of the Defendants as described above, John Cordell experienced significant mental anguish.

11.3  As a direct and proximate result of the unlawful conduct of the Defendants as described above, John Cordell has experienced a diminished quality of life and

impairment to his ability to enjoy life.

11.4    As a direct and proximate result of the unlawful conduct of the Defendants as described above, John Cordell has experienced a loss of earnings and an impairment to his earning capacity.

11.5    As a direct and proximate result of the unlawful conduct of the Defendants as described above, John Cordell incurred costs in having to make bond to get out of jail during the pendency of the criminal prosecution against him as well as the cost of hiring an attorney to defend him on those charges.

11.6    As a direct and proximate result of the unlawful conduct of the Defendants as described above, John Cordell has incurred medical expenses for the treatment of his physical and emotional injuries and may incur additional expenses in the future.

11.7    As a direct and proximate result of the unlawful conduct of the Defendants as described above, John Cordell has suffered a permanent injury.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully demands judgment against Defendants, jointly and severally to the extent permitted by law, as follows:

1.    That proper process issue and be served upon the Defendants, requiring them to answer this Complaint within the time required by law;

2.    That Plaintiff be awarded a judgment for compensatory damages in an amount to be determined by the trier of fact not to exceed the maximum amount allowed by law and that Defendant Hamilton County be additionally jointly liable for his compensatory damages up to the limits provided in Tenn. Code Ann. § 8-8-303;

3.    That the Plaintiff be awarded a judgment for punitive damages against Defendant Cameron and Defendants John Does in an amount that is necessary to punish

Defendant Cameron and Defendants John Does and to deter others from committing similar wrongs in the future;

    4.    That the Plaintiff be awarded his costs, litigation costs, discretionary costs, pre- and post judgment interest, and attorney's fees pursuant to 42 U.S.C. §1988; and

    5.    That Plaintiff be granted such other, further, and general relief as to which he is entitled.

    Respectfully Submitted,

MOSELEY & MOSELEY
Attorneys at Law
BY: /s/ James Bryan Moseley
      James Bryan Moseley No. 021236
Attorneys for Plaintiff
237 Castlewood Drive, Suite D
Murfreesboro, Tennessee 37129
615/ 254-0140
Fax: 615/ 244-2270
bryan.moseley@moseleylawfirm.com